ABBOT and another, Trustees, etc., Plaintiffs in error, vs. DWINNELL, Defendant in error.

*September 26 — October 15, 1889.*

RAILROADS: NEGLIGENCE: INJURY AT STREET CROSSING. *(1) Absence of flagman. (4–6) Instructions to jury: Duty of traveler to stop and listen: Court and jury: Contributory negligence induced by acts of defendants: Specific negligence.*

EVIDENCE. *(2, 3) Expert testimony: Opinion based on testimony.*

1. The absence of a flagman or other person at a street crossing to give warning of danger may be shown as an item of evidence to be considered by the jury in connection with all the other evidence upon the question of the negligence of a railroad company in moving its trains or cars over such crossing.

2. A surgeon testifying as an expert may give his opinion as to the probable effects of an injury and their probable duration, although he has not examined the person injured for more than a year.

3. An expert may give his opinion based upon the testimony of another witness whom he heard testify, if such testimony was brief, plain, and uncontradicted, or where the jury is informed of the exact fact upon which the opinion is based. *Bennett v. State,* 57 Wis. 69, distinguished.

4. In an action for personal injuries alleged to have been received at a railroad crossing by reason of defendants' negligence in moving a car on the railroad track unattended by the switch-engine or any person, it appeared that plaintiff's view of the track was obstructed by cars standing upon a side-track. The jury were instructed that "if, when the plaintiff came near the crossing, he did not see the moving car crossing the yard and could not see it in time to prevent the accident, and the engine was some distance west of the crossing, standing still or moving west, and he knew that fact, he had the right to suppose and believe that no train or cars were coming from the west that would prevent him from crossing in safety under the circumstances, and there was no occasion for him to stop his team so long as the engine was moving west of the crossing or standing still." *Held,* error. Whether, under the circumstances stated, the plaintiff should have stopped and listened before crossing, was a question of fact for the jury.

5. The jury were further instructed that "if, by the neglect or omission of those in charge of the yard to give any warning of the ap-

proach of that car to the crossing, at the time when the engine was standing still or moving west, the plaintiff's vigilance was allayed, the defendants are not at liberty to impute the consequences of their acts to his want of vigilance, and if their acts brought him within the boundaries of peril the defendants must answer for the result." *Held,* error, since the jury might infer that, if the defendants' employees were guilty of negligence which in any way tended to influence the plaintiff's action, negligence on the part of the plaintiff should not affect his right to recover.

6. The jury were instructed that if they found that defendants' employees were guilty of negligence which caused the injury, they should further, in their special verdict, "specify particularly in what that negligence consisted — whether it was in the management of the car, in letting the car cross loose, not having a brakeman on the car, in having no switchman or flagman at the crossing, or whatever you find the negligence to be." The jury found that the negligence consisted "in giving no sufficient warning as the car approached the crossing, and in having the view of the track shut off by box-cars standing near the highway." *Held,* that such instruction did not give the jury the right to infer that each of the matters mentioned was negligence as a matter of law, and the finding shows that they did not so understand it.

APPEAL from the Circuit Court for *Winnebago* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The defendant in error brought his action in the circuit court against the plaintiffs in error, to recover damages for injuries received by being thrown from his wagon while crossing a railroad track, which was at the time operated by the plaintiffs in error. The accident happened in the city of Stevens Point, at a place near the depot in said city, and where the railroad tracks cross Center street in said city.

The evidence in the case shows quite satisfactorily that on the 20th of September, 1887, the plaintiff was driving a two-horse team with a light wagon loaded with fruit-trees along Center street in said city, coming from the south and going north; that when he came near the place where

said street is crossed by the railroad tracks, plaintiff saw the switch-engine, either standing still at the depot several hundred feet from the crossing, or moving away from the crossing; that at the left-hand side of the street as plaintiff was going north there was a siding called a storage track, which was filled with freight-cars from a point near the street crossing for several hundred feet west, hiding from view the other tracks of the railroad for several hundred feet west of the street crossing; that when the defendant saw the switch-engine standing near the depot he started his horses on a trot to make the crossing, and, as soon as the horses and wagon passed the end of the cars on the storage track, a single box-car was coming down unattended by any one, on another track of the railroad, and had approached to within a short distance of the street crossing; that the horses, on discovering the car approaching, were frightened, and sprang to the right, and then made a short turn again to the left, and threw the plaintiff from the wagon and he was injured. The car neither struck the horses, wagon, nor plaintiff. The plaintiff did not see the approaching car until he passed the end of the cars on the storage track.

For the injury sustained under these circumstances the defendant in error brought his action. Upon the trial in the circuit court, he recovered a verdict for $2,000. From the judgment entered on the verdict the defendants bring the case into this court by writ of error.

The plaintiffs in error make the following assignment of errors:

"*First.* It was error to permit the plaintiff to show that nobody was stationed at the crossing to warn people.

"*Second.* It was error to permit the expert, Dr. Rood, to testify as to the probable effect of the injury and what might be reasonably expected as to the duration of the

injury, such expert not having examined the plaintiff within a year.

"*Third.* It was error to permit Dr. Phillips to testify as to the probable result of such an injury as testified to by Dr. Rood.

"*Fourth.* It was error to permit Dr. Phillips to answer the following questions: ' *Question.* Suppose the injury produced paralysis, mentioned by Dr. Rood, what would be the indications arising from this state and condition? *Question.* Suppose paralysis existed at that time that the evidence and bruise and concussion mentioned by Dr. Rood, what would be the probable duration of the injury affecting his powers of motion? *Question.* State whether injuries arising from being thrown from a wagon, or blows upon the person, mentioned by Dr. Rood, are likely or liable to be of long standing. *Question.* Would paralysis, to that extent discovered by Dr. Rood, indicate unmistakably that there had been concussion of the spine to any extent, or might paralysis exist and the spine be wholly unaffected ? '

"*Fifth.* It was error for the court to give the following charge: ' Whether it was in the management of the car, in letting the car cross loose, not having a brakeman on the car, in having no switchman or flagman at the crossing, or whatever you may find the negligence to be.'

"*Sixth.* It was error for the court to charge as follows: ' If, when the plaintiff came near the crossing, he did not see the moving car crossing the yard, and couldn't see it in time to prevent the accident, and the engine was some distance west of the crossing, standing still or moving west, and he knew where the engine was, and knew that it was standing still or moving still further west, *he had a right to suppose and believe* that no train or cars were coming from the west that would prevent him from crossing in safety under such circumstances, *and there was no occasion*

---

Abbot and another vs. Dwinnell.

---

*for him to stop his team* so long as the engine was moving west of the crossing or standing still.'

" *Seventh.* It was error for the court to charge as follows: ' If, by the neglect or omission of those in charge of the yard to give any warning of the approach of that car to the crossing, at the time when the engine was standing still or moving west, *the plaintiff's vigilance was allayed*, the defendants are not at liberty to impute the consequences of their acts *to his want of vigilance*, and if their acts brought him within the boundaries of peril the defendants must answer for the result.'

" *Eighth.* It was error for the court to deny the motion for a new trial.

" *Ninth.* It was error for the court to deny the motion of the defendants for judgment on the verdict."

For the plaintiffs in error there was a brief by *Charles W. Felker*, attorney, and *D. S. Wegg* and *Howard Morris*, of counsel, and oral argument by *Mr. Felker*.

For the defendant in error there was a brief by *James O. Raymond*, attorney, and *Cate, Jones & Sanborn*, of counsel, and oral argument by *D. Lloyd Jones*.

TAYLOR, J.  This court has repeatedly held that the first assignment of error was not well taken.  Although the neglect to place any one at the crossing for the purpose of warning people of danger at that place may not be conclusive evidence of negligence on the part of the company, still this court holds that the fact may be shown " as an item of evidence to be considered by the jury in connection with all the other evidence in the case, upon the question of the defendants' prudence or negligence in moving the train at the time and place in question."  *Hoye v. C. & N. W. R. Co.* 67 Wis. 1, 15; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, 381; *Butler v. M. & St. P. R. Co.* 28 Wis. 487, 498; *Kinney v. Crocker*, 18 Wis. 74, 82.  It was cer-

tainly competent evidence, tending to show negligence on the part of the defendants, that they were sending their cars across a public street in a city at a place where the approach of such cars to the street crossing was concealed from the view of those approaching such street crossing, without having any person, either on the cars or on the crossing, to warn persons of the danger from such approaching cars.  It is not in fact claimed by the learned counsel for the plaintiff in error that the evidence of negligence on their part was not sufficient to sustain the verdict upon that question.

The second assignment — that it was error to permit Dr. Rood, an expert witness, to give his opinion as to the probable effects of a known injury, and the probable duration of the injurious effects — seems to us equally groundless. The fact that the expert witness had not examined the person injured for a year or more before giving his testimony cannot make his answers objectionable and inadmissible, although that fact might lessen the weight which such evidence should have with the jury.

The third and fourth assignments raise the question of the propriety of permitting an expert witness to give his opinion, based upon the testimony of another witness who has given testimony in the case, and whose evidence was given in the presence and hearing of the expert called upon for his opinion.  There was certainly no error in permitting the answer to the question: "What would be the probable result of such an injury as testified to by Dr. Rood?"  If the question itself had been an improper one, the answer cured the defect in the question.  The answer was: "If the spinal cord was injured, it would be likely to leave him much weakened in the back; much weakened in the limbs,— in the use of his limbs; in the strength of them,— in the sensibility.  Those injuries are likely to get worse instead of better."  This answer is not founded upon anything testi-

fied to by Dr. Rood, and is based wholly on *the supposition* that the spinal cord of the plaintiff had been injured. It was claimed by the plaintiff that his spinal cord had been injured by being thrown from his wagon, and it was claimed by him that the evidence introduced on his part at least tended to prove that fact. Under all the authorities he would have been entitled to put to the expert witness the hypothetical question: "Supposing the spinal cord had been injured by the accident, what would be the probable result of such injury?" The answer given by the expert is simply an answer to this question. There was no error, therefore, even if the question might have been objectionable. From the answer given by Dr. Phillips, the jury were informed of the exact fact upon which the expert opinion was based, viz., an injury to the spinal cord. See *Bennett v. State*, 57 Wis. 84.

The fourth assignment of error raises the same question as the third, viz., the propriety of asking an expert witness to give his opinion upon the evidence of another witness who has testified in the case, and whose testimony was heard by the expert witness whose opinion is called for. That it is proper to propound such question to the expert witness, and have him answer the same, was decided by this court. *Wright v. Hardy*, 22 Wis. 348, 354. This case has not been overruled by any subsequent decision of this court. It was referred to in *Bennett v. State*, 57 Wis. 82, where it was said, speaking of the question propounded in the case of *Wright v. Hardy, supra*: "This does not present the same case now before the court. There a single witness had made a statement as to the amputation of a leg, and the subsequent treatment thereof; the expert had heard this statement when made in court. There is no suggestion that there was anything in the statement made which was contradictory, or from which different inferences might properly be drawn. And this court held that

upon such a state of facts the expert might give his opinion." That there was no intention to overrule the decision in *Wright v. Hardy*, in the case of *Bennett v. State*, is shown by a further statement in the opinion of the latter case (57 Wis. 83), viz.: "The case of *Wright v. Hardy* should not, we think, be extended to cover a case like the one at bar. The record [in the case at bar] discloses that the evidence bearing upon the question of insanity was very voluminous, elicited by the examination of a large number of witnesses. The taking of the evidence occupied several days, and it cannot be said that it was all harmonious or entirely uncontradictory." It was for the reason above quoted that this court declined to apply the rule in the case of *Wright v. Hardy* to the case then under consideration. The same distinction between the case of *Wright v. Hardy* and *Bennett v. State* was stated and approved by this court in the case of *Gates v. Fleischer*, 67 Wis. 504, 509, and the rule in *Wright v. Hardy* approved, upon the facts of that case.

In the case at bar the testimony of Dr. Rood, upon which the expert witness Phillips was asked to give his opinion, was brief, plain, and uncontradictory, so that there could be little ground for supposing that the expert could understand the same differently from the jury; and we think it was a proper case for applying the rule in *Wright v. Hardy* rather than the rule stated in *Bennett v. State*. There was no error, therefore, in permitting the questions to be answered by the witness.

The fifth, sixth, and seventh errors assigned relate to the instructions given by the court to the jury. The fifth assignment is that the court erred in instructing the jury upon the question of the negligence of the defendants. The second question to be answered by the jury was, "If you answer the first question in the affirmative, state in what respect such negligence consisted." The first question was,

"Were the defendants' employees guilty of negligence that caused the injury?" In instructing the jury upon the second question the court said: "If you answer the first question 'Yes,' then it will be necessary for you to answer this question, and specify particularly in what that negligence consisted,— whether it was in the management of the car, in letting the car cross loose, not having a brakeman on the car, in having no switchman or flagman at the crossing, or whatever you find the negligence to be." The jury answered the question as follows: "In giving no sufficient warning as the car approached the crossing, and in having the view of the track shut off by box-cars standing near the highway." It is claimed by the learned counsel for the plaintiff in error that the instruction was erroneous, because the jury had the right to infer from the language used that each and every of the matters set forth in the charge, viz., "the management of the car," "letting the car cross loose," "not having a brakeman on the car," "having no switchman or flagman at the crossing," was negligence as a matter of law. We think the criticism of the learned counsel upon this instruction is not just, and the answer of the jury shows they did not understand it as interpreted by the counsel. The instruction simply informed the jury as to some of the matters they might consider in declaring in what respect the defendants were negligent; and it is clear that all the matters stated were proper to be considered in determining that question.

The sixth assignment of error takes exception to the instructions of the court upon the subject of contributory negligence on the part of the plaintiff. It is urged by the learned counsel for the plaintiffs in error that the court instructed the jury that if they found that certain facts existed at the time the plaintiff crossed the track, then as a matter of law he was not to be charged with contributory negligence. The facts from which this legal inference is

drawn were stated by the court as follows, viz.: "If, when the plaintiff came near the crossing, he did not see the moving car crossing the yard, and could not see it in time to prevent the accident, and the engine was some distance west of the crossing, standing still or moving west, and he knew that fact, he had a right to suppose and believe that no train or cars were coming from the west that could prevent him from crossing in safety under the circumstances, and there was no occasion for him to stop his team so long as the engine was moving west of the crossing or standing still." The facts stated were undoubtedly facts, if proven, to be taken into consideration by the jury in determining the question as to the negligence or absence of negligence on the part of the plaintiff in driving upon the track in the way he and his witnesses show he did; but we do not think that, upon the facts stated, the absence of negligence on his part can be predicated as a question of law. It is only in exceptional cases that negligence or the absence of negligence become questions of law. Usually these questions are questions of fact, to be determined by the jury upon all the evidence in the case. Although the burden of proving the contributory negligence of the plaintiff is on the side of the defendant, still if there be facts proven in the case which tend to show such contributory negligence, then the question becomes a question of fact, and it is error to take the case from the jury.

It is urged by the counsel for the defendant in error that the general question of the contributory negligence of the plaintiff was submitted to the jury under instructions from the court, to which no exceptions were taken, and to which there could be in fact no just exception; and for that reason the instruction excepted to should not work a reversal of the judgment, even if it were erroneous. The court, among other things, did instruct the jury as follows: "If, under all the circumstances, ordinary care and prudence

required him not only to look and listen but to stop his team before attempting to cross, and he did not stop them, then you should answer the fourth question [1] in the affirmative. You will notice this instruction begins: If, under all the circumstances, ordinary care and prudence required him to do that. That is a question for you to determine from all the evidence." This instruction would not cure the error in the instruction excepted to, if it be erroneous, for the reason that in it he had stated that if certain facts were found to exist at the time, then he was not bound to stop his team. The second instruction must be considered in connection with the first, and the first would necessarily limit the second in the minds of the jury.

Under the decisions of this court, as well as of many other courts, the question as to whether or not a person approaching a railroad crossing should stop as well as look and listen, is usually a question of fact and not of law. This court has held that when the railroad track is hidden from the view of the approaching traveler for some considerable distance, and the noise made by the wagon upon which the traveler is riding is such as to interfere with his hearing the approach of a train, it is his absolute duty to stop his team and listen before attempting to cross the railroad track. *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216. In the case of *Duame v. C. & N. W. R. Co.* 72 Wis. 523, this court held that, under certain circumstances, it was not the imperative duty of the approaching traveler to stop and listen for the train before crossing; and reversed a judgment of nonsuit in the court below, which was apparently ordered because the plaintiff was guilty of contributory negligence for not stopping and listening before

---

[1] The fourth question and the answer thereto were as follows: "Was there a slight want of ordinary care on the part of the plaintiff in driving over the crossing without stopping his team before he crossed? *Ans.* No."— REP.

attempting to cross. While this court has held, in the case first above cited, that under a certain state of facts the traveler will be guilty of contributory negligence if he does not stop and listen before attempting to cross a railroad track; and in the second case has held that under other circumstances he may cross the track without stopping to listen, without being guilty of any negligence on his part,—both cases are, by the circumstances attending them, taken out of the ordinary rule that not stopping to listen before crossing is not, as a matter of law, conclusive as to the negligence of the traveler.

Nor is the fact that the circumstances stated in the instruction excepted to existed at the time conclusive evidence that the plaintiff was not guilty of contributory negligence. These facts were simply evidence in favor of the plaintiff, to be considered by the jury in deciding the question of his negligence. It was for the jury to say, under all the circumstances, whether the plaintiff ought to have taken the precaution to stop and listen before crossing. The evidence shows that the railroad tracks over which he was about to cross were obscured from his view by a long line of cars standing on the storage track. Whether, by reason of that fact, he was justified in crossing without stopping to listen for approaching cars before crossing, because he observed that the switch-engine was some distance from the crossing, was a question of fact for the jury, and not of law for the court. We are constrained to hold that the exception to this instruction was well taken, and that it might have influenced the jury against the plaintiffs in error.

The other instruction excepted to, it seems to us, had a tendency to mislead the jury. They might have inferred from its language that if they found that the employees of the defendants were guilty of negligence, and that such negligence in any way tended to influence the action of the

plaintiff, then, although they might have thought that the plaintiff was guilty of negligence on his part, such negligence should not affect his right to recover. The jury would probably understand from this instruction that, if the defendants or their employees omitted to give any warning of the approach of the car that frightened the plaintiff's horses, then the plaintiff was justified in driving upon the track without stopping or listening, and that his neglect in this respect, if he was negligent, should not be attributed to the plaintiff, but to the defendants. We are inclined to hold that the exception to this instruction was also well taken.

*By the Court.*— The judgment of the circuit court is reversed, and the case is remanded for a new trial.