BILLS, Respondent, vs. THE TOWN OF KAUKAUNA, Appellant.

*October 15 — November 4, 1896.*

*Highways: Notice of discontinuance: Barbed-wire fence: Negligence: Court and jury.*

1. Where a highway containing a plain and well-beaten track is discontinued, it is the duty of the town to give such notice or warning or erect such barriers as will prevent its use by travelers by night as well as by day; and in the absence of such notice travelers have a right to presume that such a highway has not been discontinued or obstructed.

2. Where a town has permitted a barbed-wire fence to be placed across a discontinued highway in such a way that it not only failed to warn travelers by night but exposed them to positive danger, it is liable for damage caused thereby.

3. Driving over a highway at the rate of five or six miles an hour, even in the nighttime, is not negligence or evidence of negligence.

4. The question of contributory negligence is ordinarily for the jury, but where the inferences that may be fairly drawn from the evidence point to but one conclusion, the question is for the court.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This was an action to recover the damages sustained by the plaintiff for the death of his horse, and breaking and injuring his harness and wagon, while said horse and wagon were driven in the nighttime on and along an alleged defective, unsafe, and dangerous highway of the defendant town, it being alleged that the horse ran against a barbed-wire fence that had been erected upon and across the highway, about forty feet southwest of the center of section 7 in said town. The answer denied that the *locus in quo* was at the time, or for a long time prior thereto had been, a public highway, and alleged contributory negligence on the part of those driving and having the horse in charge. At the trial it was admitted that from the center of said section 7 a highway ran east and west, and that another highway from the north intersected it at right angles at such center, and that from the south line of the east and west highway, at said point, there had been a highway leading southwesterly, but that it had been vacated about a year prior to the accident; that the wire fence was on the south side of the east and west road. The evidence was to the effect that the plaintiff had let the horse and buggy to one Ellingboll, to take a ride, and next saw the horse dead, by the wire fence across the road running southwest from the corner, where the horse was killed; that the road was an old beaten road, and to all appearances a main traveled road; that the road to the right was traveled but little, and was new, and had the appearance of a newly-traveled highway; that the road where the horse was killed was an old, worn-down road, worn out as teams would wear it out, and there was a down grade in approaching this point from the north.

The plaintiff testified that he had been over the road many times, and never knew that there was a wire fence there before the horse was killed; there was no railing, fence, or barrier of any kind between the wire fence and the road coming from the north; that the posts of the wire fence were twelve or thirteen feet apart; and that there was no post in said traveled track; but there was evidence to show that there was a post on the left-hand side of the roadbed, about halfway between the left-hand wheel track and the center of the road.

Ellingboll testified that he had driven north of that point, and in coming home, between 11 and 12 o'clock that night, two young ladies were riding with him; one sat with him on the buggy seat; the other was sitting on her knee and on one of his knees; that she was driving, at an ordinary trot, about five or six miles an hour, and the night was quite dark; that he had never been over the road before; that there was nothing about the appearance of the road, or anything, to indicate danger of any kind; that they were looking out at the time, and he was able to distinguish the road, but not the wires; that the horse struck the wires nearly square, slid off to the right, and the wires cut his throat, and the wheels and harness were damaged; that they were not making much noise, but were singing at the time. The young lady who was driving testified that she was looking out to see where she was driving; that she was able to see the roadbed right through beyond, and could see no obstruction; could see the posts, but thought the road ran right along. It was proved that Mr. Rice, a member of the town board, put up the wire fence several weeks before the accident. One Tuttle, a witness for the plaintiff, testified that the east and west road had a well-traveled, plainly-defined track, and had been in use a number of years; that the principal travel was on the other road, until shut up; that the road going south had a hard, well-defined track, as much as

it had had during the time it was traveled, except the absence of wheel marks, which would not be noticed in the nighttime. At the close of the testimony the court directed a verdict in favor of the plaintiff; and, the jury having assessed his damages at $250, a verdict and judgment were entered accordingly, from which the defendant appealed.

*Humphrey Pierce*, for the appellant, to the point that under the evidence the question of contributory negligence ought to have been submitted to the jury, cited *Bloor v. Delafield*, 69 Wis. 273, 279; *Spaulding v. Sherman*, 75 id. 77; *Stucke v. M. & M. R. Co.* 9 id. 203, 214, and cases cited; *Ward v. M. & St. P. R. Co.* 29 id. 144; *Potter v. C. & N. W. R. Co.* 21 id. 373; *Wilds v. H. R. R. Co.* 24 N. Y. 430, 434; *Johnson v. H. R. R. Co.* 20 N. Y. 65, 73; *Siegel v. M. & N. R. Co.* 79 Wis. 404.

*G. H. Dawson*, for respondent.

PINNEY, J. 1. Under any reasonable construction or effect that may be given to the evidence, the defendant town was guilty of negligence, which was the proximate cause of the injury, of which the plaintiff complains. It was held in *Schuenke v. Pine River*, 84 Wis. 669, in substance that, where a town discontinues or alters the course of a traveled highway, it is its duty to erect and maintain suitable signals or barriers at the point of its discontinuance or divergence, to warn travelers of the fact, and that they must not proceed on the old track, but must turn upon the new road. *Cartright v. Belmont*, 58 Wis. 373. It appears from the evidence that persons not familiar with the road in the nighttime would be liable to follow the old track, as it was well beaten and plain, and that the persons traveling on the road upon this occasion had no knowledge that travel had been discontinued on it south of the east and west road, or that any wire fence or obstruction had been placed across it. It was the duty of the town to give such notice or warning as

would serve to prevent the use of the discontinued road by night as well as by day, as travelers have a right to use the public highways by night as well as by day, using reasonable care and caution in doing so. In the absence of anything to the contrary, travelers have a right to assume that a highway that appears to be open and used for public travel has not been discontinued, or travel on it obstructed by any device or means, especially such as a barbed-wire fence, practically imperceptible in the nighttime, and especially dangerous to persons or horses coming into sudden contact with it. The notice or barrier to warn travelers, in the present instance, in the nighttime, was not only an utter failure, but exposed them to great and positive danger of injury to person and property. As was said in *Munson v. Derby*, 37 Conn. 311: "The road, as it was, therefore, was a trap, and it was manifestly the duty of the town to use all reasonable precautions to prevent strangers and the unwary from being caught in it, and neglect to use such precautions rendered the highway insufficient and defective." The evidence of the negligence of the defendant town was therefore clear and decisive.

2. It is urged that the question of alleged contributory negligence of those in charge of and driving the horse should have been submitted to the jury. It is not negligence *per se* to travel in the nighttime, although greater care and caution may be required than in the daytime. Nor is riding or driving at a high rate of speed negligence *per se*. *Brennan v. Friendship*, 67 Wis. 223. Nor is it necessarily a want of ordinary care to drive at night through a violent storm. *Milwaukee v. Davis*, 6 Wis. 377–391; *Hart v. Red Cedar*, 63 Wis. 634. Certainly it cannot be said that driving at the rate of five or six miles an hour, even in the nighttime, without knowledge of any defect or obstruction in the highway, is negligence or evidence of negligence. The question of contributory negligence is generally for the

Stahl vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

jury, under all the facts and circumstances of the case, and the inferences that may be properly drawn from them; but where, as in this case, there is really no evidence of contributory negligence, and all the inferences that may fairly be drawn from the evidence point to but one conclusion, then the question of contributory negligence is for the court, and not for the jury.

There is no other question in the case requiring discussion. The direction of a verdict for the plaintiff was correct.

*By the Court.*— The judgment of the circuit court is affirmed.