BLUHM, Respondent, vs. BYRAM and others, Receivers, Appellants.

*May 3—June 20, 1927.*

*Railroads: Accidents at grade crossings: Negligence: Withdrawal of customary flagman.*

1. In an action against a railroad company for damages to a taxicab in a collision with a passenger train, the issue as to whether defendants' failure to maintain a flagman at a crossing constituted a lack of ordinary care was properly submit-

ted to the jury, where the flagman was maintained 'at such crossing on all days of the week except Sunday, on which day the collision occurred.   p. 348.

2. The flagman having usually been maintained at the crossing, his withdrawal without notice to the public, which has a right to rely on his presence, may in and of itself constitute a want of ordinary care.   p. 348.

3. If a railroad company fails to give protection to the public by lowering the gate or by signal from the flagman regularly maintained at the crossing, it is guilty of actionable negligence.   p. 349.

4. Evidence that plaintiff knew that a flagman was maintained at the crossing; that he thought such flagman was there at all times, including Sundays; and that he looked both ways and looked for such flagman, is *held* sufficient to take the question of plaintiff's contributory negligence to the jury.   p. 349.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge.   *Affirmed.*

Action by *Frank Bluhm* against the receivers of the Chicago, Milwaukee & St. Paul Railroad to recover for damage done to a taxicab when it collided with one of the defendants' passenger trains.   From a judgment for the plaintiff the receivers appeal.

The accident occurred on Sunday evening at a crossing where a flagman was regularly on duty all of the week except on Sunday.   Plaintiff's view of the approaching train was obstructed by a building until he was from twenty to twenty-five feet distant from the railroad track.

The jury found that the fact that the railroad maintained a flagman at the crossing in question on secular days and not on Sundays constituted a lack of ordinary care for the safety of travelers on the highway and that such want of care was the proximate cause of the collision; that the plaintiff was not guilty of contributory negligence, and assessed the damages at $950.

For the appellants there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *Brown, Pradt & Genrich* of Wausau, and oral argument by *Mr. Trump.*

For the respondent there was a brief by *John P. Ford* and *Bird, Smith, Okoneski & Puchner,* all of Wausau, and oral argument by *Mr. Ford* and *Mr. R. E. Puchner.*

STEVENS, J.   The appellants contend that it was error to submit to the jury the issue whether the failure to maintain the flagman constituted a lack of ordinary care; that the issue that should have been submitted to the jury was the question whether the railroad failed to exercise ordinary care in the movement of its trains in view of all the surrounding facts and circumstances, including the absence of the flagman.

Appellants' position is based on the decisions of this court holding that a jury is not competent to determine whether a flagman ought to be maintained at a crossing.  *Winchell v. Abbot,* 77 Wis. 371, 375, 46 N. W. 665; *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 256, 257, 42 N. W. 237.   See, also, *Abbot v. Dwinnell,* 74 Wis. 514, 518, 519, 43 N. W. 496; *Hoye v. C. & N. W. R. Co.* 67 Wis. 1, 14, 15, 29 N. W. 646.   But see *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, 381, 39 N. W. 856.

In each of the cases cited above no flagman had ever been placed at the crossing there in question.   In the case at bar, however, the railroad itself had determined that it was necessary to station a flagman at the crossing.   The fact that the question of the necessity of placing a flagman at this crossing was no longer an open one takes this case out of the rule of the decisions cited above upon which the appellants rely.

Where a flagman has usually been maintained at a crossing, his withdrawal without notice to the public, which has a right to rely upon his presence, may in and of itself constitute a want of ordinary care because "the traveler might in this way be lured into danger, when, if no flagman had ever been kept there, he would not have looked for such a signal, but would have looked and listened for other signs of an approaching train.   We cannot but approve of the author-

ities . . . which hold that the withdrawal of a flagman from a crossing where he is usually kept to signal approaching travelers, is negligence." *Burns v. North Chicago R. M. Co.* 65 Wis. 312, 315, 27 N. W. 43. See, also, *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 237, 157 N. W. 753.

The absence of a signal from a flagman at a crossing where a flagman is regularly maintained is, like an open gate at the railway crossing, an assurance to the public that there is no danger and an invitation to cross in safety upon which the public has a right to rely. If the railroad fails to give protection to the public under such circumstances by lowering the gate or by signal from its flagman it is guilty of actionable negligence. *Rohde v. C. & N. W. R. Co.* 86 Wis. 309, 312, 56 N. W. 872. The court submitted the proper issue to the jury.

(2) The question whether the plaintiff was guilty of contributory negligence was also for the jury. The trial court concisely summarized the facts and correctly stated the law that is controlling when it said:

"Plaintiff testified that he knew that a crossing flagman was maintained on this crossing, that he had been at times stopped by the flagman; that he thought there was a crossing flagman there all the time, including Sundays, and that as he approached the track he looked for the flagman and saw no one there and supposed the coast was clear, and that he then started across. It thus appears that he was in the exercise of some degree of care. He looked both ways and looked for the flagman. He says also that he listened, but it is clear that being within a closed car, which was making a good deal of noise, he had no reasonable opportunity of hearing. However, he looked both for the train and for the flagman. Unless it can be said that it was his absolute duty to approach the crossing at so slow a rate of speed and with his car in such control that he could stop it within the space in which he could have seen the train, notwithstanding the fact that he was deceived by the absence of the flagman into believing the crossing clear, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence."

"While the plaintiff in this case might not rely upon the fact . . . that the flagman was not present as an absolute assurance of safety and proceed without regard to his own safety, such circumstances are nevertheless factors to be considered in determining whether or not the plaintiff was at the time in the exercise of ordinary care. . . . It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained, take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances." *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 443, 444, 179 N. W. 577, 985. See, also, *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 237, 157 N. W. 753.

*By the Court.*—Judgment affirmed.