FIRKUS, Plaintiff, v. ROMBALSKI and another, Defendants and Respondents: TOWN OF HULL, Impleaded defendant and Appellant.    [Case No. 47.]

SHERIDAN, Plaintiff, v. HOME MUTUAL INSURANCE COMPANY, Defendant and Respondent: FIRKUS and another, Defendants, Respondents, and Cross Appellants: ROMBALSKI, Impleaded Defendant and Respondent: TOWN OF HULL, Impleaded Defendant and Appellant.    [Case No. 48.]

*October 1—October 27, 1964.*

For the appellant there was a brief by *Atwell & Atwell* and *James H. Van Wagenen,* all of Stevens Point, and oral argument by *Mr. William E. Atwell, Jr.,* and *Mr. Van Wagenen.*

For the respondents Peter F. Rombalski and the Home Mutual Insurance Company there were briefs by *Byrne, Bubolz, Spanagel & Pfankuch* of Appleton, and oral argument by *Edward Byrne.*

For the respondents and cross appellants Joseph J. Firkus and the Farmers Mutual Automobile Insurance Company there were briefs by *Peickert, Anderson, Fisher, Shannon & O'Brien* of Stevens Point, and oral argument by *John E. Shannon, Jr.*

HALLOWS, J. Rombalski in driving his car north on Dobeck road was proceeding, according to his testimony, about 50 miles an hour and according to Sheridan's testimony about 70 miles per hour. Rombalski testified he did

not know he was approaching an intersection until he was 25 feet from it. There was no stop sign on Dobeck road and he did not reduce his speed in entering the intersection. He first saw the Firkus car when he was 10 to 15 feet from the intersection and when the Firkus car was a few feet from entering the intersection. Sheridan testified he saw the intersection when it was about 500 feet distant. When Rombalski and he were about 100 feet south of the intersection he saw the Firkus car about 50 feet west of the intersection. All Rombalski did when he saw Firkus was to take his foot from the accelerator and tap the brake.

Firkus testified that as he approached the intersection from the west he was traveling about 40 to 45 miles per hour and did not reduce his speed in entering the intersection. The first time he saw Rombalski's car was when it was 80 feet south of the intersection and he was about 20 feet west of the intersection. As he entered the intersection he stepped on the gas and speeded up to get out of Rombalski's way. The Rombalski car struck the Firkus car approximately in the center of its right side.

It is undisputed the area southwest of the intersection was heavily wooded with pine trees which obscured the vision of each driver. Sometime in 1957 or 1958, the town board of the town of Hull decided to erect stop signs on the Dobeck road where it intersects with Jordan road, thereby giving preference to traffic on Jordan road. In March or April of 1962, the sign to the south of Jordan road was removed by vandals, but the record does not show the board chairman of the town had actual knowledge of this fact prior to August 7, 1962. New signs were ordered on August 8 but had not arrived and the missing sign had not been replaced at the time of the accident. Firkus testified he believed the sign was still there while Rombalski stated he did not notice the post nor did he realize a sign had ever been there.

The town of Hull contends the trial court erred in denying its motion to dismiss the cross complaints against it. It is argued Jordan road is not a duly established arterial or through highway because sec. 349.07 (3) and (4), Stats., requires a local authority to declare a highway or portion thereof a through highway by ordinance or resolution and such ordinance or resolution is not effective until official stop signs or traffic control signals have been installed. The record discloses no ordinance or resolution, formal or informal, declaring Jordan road to be a through highway. However, the town board did approve an oral motion to erect stop signs under sec. 349.08 (5), which permits towns to put up additional stop signs on a roadway at its discretion.

The town of Hull contends this section authorizes it not only to place additional stop signs on roadways but also to remove such signs whenever it thinks they are no longer necessary. Assuming this is true the signs were not removed by the town because they were no longer considered necessary but by vandals. No statute or decision in Wisconsin up to now has held it to be a duty of a town to maintain stop signs once they have been erected under sec. 349.08 (5), Stats. This duty is asserted not as a statutory duty to repair defects in highways but as a common-law duty actionable since governmental immunity was abolished by *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618.

The trial court was of the view that, "Having effectively and practically established Jordan Road an arterial highway at the Dobeck Road intersection by having the official stop signs in position for over five years, the Town of Hull was charged with the duty of maintaining the stop signs so as to avoid a trap for motorists." The town had no affirmative duty to erect the sign in the first instance, but having done so it was incumbent upon it to properly maintain the sign as a safety precaution to the traveling public which has the right to rely on its presence. See *Van de Walker v. State* (1938),

278 N. Y. 454, 17 N. E. (2d) 128; *Nuss v. State* (1950), 301 N. Y. 768, 95 N. E. (2d) 822; and the dissent of Mr. Chief Justice DESMOND in *Weiss v. Buffalo* (1960), 7 N. Y. (2d) 579, 167 N. E. (2d) 63. This duty is analogous to the liability of railroads for failure to have flagmen stationed at crossings where they ordinarily were present. *Bluhm v. Byram* (1927), 193 Wis. 346, 214 N. W. 364; *Burns v. North Chicago Rolling Mill Co.* (1886), 65 Wis. 312, 27 N. W. 43. The town may remove the stop sign if it provides fair warning to the public of the removal. See *Martinson v. Polk County* (1938), 227 Wis. 444, 279 N. W. 60; *Bills v. Kaukauna* (1896), 94 Wis. 310, 68 N. W. 992.

The potentiality of a dangerous situation is greatly increased by the failure to maintain warnings upon which the public has come to rely. It is the creation of the right of reliance and its protection which is the basis of the duty. This is not unlike the doctrine of equitable estoppel in the field of contracts. We find no error in the trial court's refusing to dismiss the cross complaints on the ground the town of Hull was not negligent as a matter of law.

Instead of submitting the question of negligence of the town of Hull to the jury the trial court found negligence as a matter of law. This is claimed to be error. Since the town of Hull had the duty to maintain the stop sign once it undertook to erect it, its failure to replace it would be negligence as a matter of law if the town had sufficient notice to remedy the situation. On August 7th the town had actual knowledge the stop sign was missing and nineteen days elapsed to the date of the accident. This time was sufficient to constitute an unreasonable delay in replacing the sign or in taking other precautions by warning or temporary signs to inform the traveling public of the danger. We find no error in the trial court finding the town of Hull negligent as a matter of law.

It is also contended the court erred in refusing to change the answer in the verdict finding the negligence of the town

of Hull causal. It is argued the court's answering the negligence question unduly influenced the jury in its consideration of the causality of such negligence and the finding was based on speculation. The record does not show the jury was influenced by the court's finding. The court properly instructed the jury that its answering the negligence question should have no bearing whatsoever on what the answer should be to the other questions. The same contention has been made in other cases where this court has pointed out the problem. *Field v. Vinograd* (1960), 10 Wis. (2d) 500, 103 N. W. (2d) 671; *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 108 N. W. (2d) 576. Whether the jury was unduly influenced in determining the apportionment of the negligence will be discussed later.

The town of Hull argues in view of the speed of the respective cars and other circumstances including the trees southwest of the intersection the accident was inevitable and the fact the stop sign was missing could not be causal. The difficulty with this argument is it disregards the probability that the speed at least of the Rombalski car would have been substantially reduced or the car would have been stopped if the sign had been present. Likewise if no stop sign had been placed there and maintained for about five years, no reliance could have been placed thereon by Firkus. In *Schmit v. Jansen* (1945), 247 Wis. 648, 20 N. W. (2d) 542, a turned stop sign for an arterial was said to "set the stage for the collision" and both drivers while exercising care and relying on his right-of-way were held not to be negligent. We think the town's negligence was a substantial factor in causing the accident.

On his cross appeal Firkus argues he was not negligent in any respect. This argument proceeds on the view he was driving 40 to 45 miles per hour on an arterial and he looked to his right when approaching the intersection as soon as he could see past the trees. While the evidence will bear this

version, it is the most favorable to Firkus. On appeal this court must look for evidence which under its most favorable and reasonable view will sustain the verdict. *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 120 N. W. (2d) 156.

Firkus was not traveling on a through highway and therefore the rules governing driving on arterials, now referred to as through highways in the statutes, are not applicable. Firkus was familiar with the intersection, having formerly lived near it. He testified he could not remember if the stop sign on the southeast corner was up or down in May, a few months before the accident, but he did remember it was there in February. It was possible for Firkus to have seen the post with the sign missing as he approached the intersection. The jury could have concluded Firkus could not rely on the sign being up either because of the lack of positive evidence that he knew the sign was there or that he should have known the sign was not there. From James Sheridan's testimony the jury could reasonably conclude Firkus should have looked sooner than he did and if he had looked he would have seen Rombalski. At 45 miles per hour the jury could have concluded Firkus' speed was excessive because he did not reduce such speed in approaching the blind intersection. Sec. 346.57 (3), Stats. Firkus had the benefit of the emergency instruction but the jury could well have denied Firkus the benefit of the doctrine on the ground his negligence contributed to the emergency.

Although we are of the opinion Firkus and the town of Hull were causally negligent along with Rombalski it does not follow the apportionment of negligence was such that it ought not be disturbed on appeal. We have said many times the apportionment of negligence is for the jury and will not be upset excepting in unusual cases. *Mullen v. Reischl* (1960), 10 Wis. (2d) 297, 103 N. W. (2d) 49; *Maus v. Cook* (1961), 15 Wis. (2d) 203, 112 N. W. (2d) 589. Such cases are generally those in which this court can find as

a matter of law the plaintiff's negligence equaled or exceeded that of the defendant. See *Kornetzke v. Calumet County* (1959), 8 Wis. (2d) 363, 99 N. W. (2d) 125. We cannot in this case determine the apportionment as a matter of law, but we do have considerable difficulty with the relative proportion of negligence apportioned to the parties by the jury. Rombalski's negligence is so disproportionate to Firkus' in any view of the facts as not to be fairly reflected by ascribing only 5 percent more negligence to Rombalski. Neither are we satisfied the jury was not influenced in apportioning 35 percent of the negligence to the town of Hull because of the trial court's determination as a matter of law that the town of Hull was negligent. On motions after verdict the trial court was of the opinion the apportionment was greatly out of line with what he would have determined if such determination were his function. While no one element may be sufficient for a reversal,[1] we think viewing the case as a whole there was a probable miscarriage of justice in the apportionment of the causal negligence. Such is a proper basis for the exercise of our discretionary power under sec. 251.09, Stats. *Chapnitsky v. McClone* (1963), 20 Wis. (2d) 453, 467, 122 N. W. (2d) 400; *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 138, 119 N. W. (2d) 321.

We hold, therefore, there should be a new trial on the issue of the apportionment of causal negligence. The finding of causal negligence on the part of Firkus, Rombalski, and the town of Hull will stand and the evidence on that issue may be introduced for the purpose of determining the apportionment thereof. This, of course, in no way affects the two plaintiffs who have settled their actions but the apportionment does have a direct effect upon the liabilities for contribution between the drivers and their insurers and the town of Hull.

---

[1] *Field v. Vinograd, supra; Niedbalski v. Cuchna, supra.*

In view of the new trial it may not be necessary to answer the last argument of the town of Hull but we believe it advisable to do so. When the settlement with Firkus was made and the cases continued on the cross complaints to determine contribution under the doctrine of *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105, the town of Hull did not agree to the settlement or approve it as a fair amount, nor did it create an issue of reasonableness. The trial court, however, approved the amount of the settlement as reasonable. Since the jury found the town 35 percent negligent it argues it is only liable for 35 percent of the settlement amount of $15,000 and not 50 percent or equally with Rombalski who was also found 35 percent negligent.

The settlement was in complete satisfaction of the total claim and included a release not only of Rombalski and his insurer but also of the town of Hull. The question is whether the $15,000 represents the amount of Firkus' damages, as a verdict would, or whether it represents the amount of recovery, as the judgment would when plaintiff is found contributorially negligent. Realistically and equitably a settlement discounts the probable contributory negligence of the claimant from the probable liability of the settlor. In contemplation of the parties to the settlement the sum agreed upon represents the net recovery on the part of the plaintiff whatever his negligence, if any, is ultimately found to be. This view is consistent with a settlement with reservation of rights where the settlement is made in terms of percentage of negligence to be or which may be determined by litigation. *Pierringer v. Hoger* (1963), 21 Wis. (2d) 182, 124 N. W. (2d) 106. The amount of the instant settlement should be viewed as a net recovery by Firkus and on the apportionment found equal to 70 percent of his damages and the town of Hull would have been liable to contribute 35/70ths or one half of the amount. The same principle should apply to the apportionment of negligence in the new trial.

364

*By the Court.*—The judgments are reversed, and a new trial granted on the issue of apportionment of negligence only. The town of Hull is to have costs on appeal.