77  371,
94  133

WINCHELL, Respondent, vs. ABBOT and another, Trustees, Appellants.

*September 3 — September 23, 1890.*

*Railroads: Injury to person at sidewalk crossing: Contributory negligence: Failure to look and listen: Court and jury: Absence of flagman: Special verdict: Judgment.*

1. The plaintiff was struck and injured by defendants' locomotive on a sidewalk crossing in a thickly settled portion of a city. It was in the night-time and the locomotive had come down the street behind her, going in the same direction. The track curved sharply just before crossing the sidewalk, which was planked continuously on a level with the tops of the rails. The testimony tended to show, among other things, that the plaintiff was not familiar with the locality and did not know the precise position of the crossing; that trees and telegraph poles between the track and the sidewalk obscured, to some extent, her view of the track; and that, because of the curve, the light from the head-light did not fall directly upon her until the locomotive was very near the crossing. *Held* that, notwithstanding a special finding that if the plaintiff had looked before attempting to cross the track she could have seen the light from the head-light, it was still a question for the jury whether she was guilty of any contributory negligence.

2. No weight can be given to a finding in the special verdict that the defendants' failure to have a light or a flagman at the crossing, to warn the plaintiff of the approaching locomotive, was negligence. The jury was not competent to determine that proposition.

3. But, the defendants' negligence in failing to provide proper means for securing the safety of persons at the crossing being conclusively established, the court should base its judgment upon the existence of such negligence, although there is no valid finding to that effect in the special verdict.

SUPREME COURT OF WISCONSIN. Vol.

Winchell vs. Abbot and another.

APPEAL from the Circuit Court for *Winnebago* County.

On December 17, 1888, at about 8 o'clock in the evening, the plaintiff was run against and injured by a locomotive engine on a railroad in the city of Oshkosh, operated by the defendants as trustees. She brought this action to recover damages for such injury.

The defendants' railroad extends through the city of Oshkosh, north and south. It enters Division street from the north, at the north end of the street, probably half a mile or more north of the place of the accident, and runs south along the street nearly to the point where plaintiff was injured. It then curves to the east entirely across the street and east sidewalk thereof. It crosses the sidewalk at an angle so acute that from the point where the east rail of the track intersects the sidewalk to where the west rail leaves it is fifty-two feet. The crossing is all planked, making a continuous sidewalk level with the tops of the rails, with no break except a groove, perhaps an inch and a half wide, inside each rail for the flanges of the engine and car wheels to run in.

Immediately before the accident, plaintiff came west on Polk street (which is the last street crossed by the track before it so curves east) to Division street, and turned down that street on the east sidewalk thereof, going in the direction of her home. She had a bundle on one arm and a basket on the other. The contents of these were clothing she had received from a customer and was taking to her own home to wash — she being a laundress. She estimated the weight of these two packages at about forty pounds. When on the crossing, she was struck by a passing locomotive, which she did not see until she was struck, and received the injury complained of. The crossing is in a thickly settled portion of the city, near the business center thereof.

The jury returned a special verdict, which is as follows: "(1) Were the defendants or their employees guilty of neg-

ligence that caused the injury to the plaintiff? Answer. Yes. (2) If you answer the foregoing question 'Yes,' state in what the negligence consisted. A. In not having a light or flagman to warn people there was danger. (3) Was the plaintiff guilty of want of ordinary care or prudence that contributed to the injury? A. No. (4) Could the engineer or fireman have seen the plaintiff before the locomotive turned on the curve? A. No. (5) Immediately preceding the accident when the plaintiff was injured, was the bell being continuously rung as the train passed down Division street? A. Yes. (6) At what rate of speed was the train running when the plaintiff was struck and injured? A. Six miles. (7) Had the plaintiff, before she attempted to go across the crossing, looked, could she have seen the light from the head-light of the locomotive? A. Yes. (8) When the plaintiff was struck by the cow-catcher of the locomotive, was she upon the crossing, or upon the railway track of the defendants south of the crossing? A. On the crossing. (Ninth question immaterial, and not answered.) (10) If the plaintiff is entitled to judgment, at what sum do you assess her damages? A. $1,100." A motion by the defendants for a new trial was denied, and judgment for the plaintiff entered pursuant to the verdict, from which judgment the defendants appeal.

For the appellants there was a brief signed by *Charles W. Felker*, attorney, and *Howard Morris*, of counsel, and oral argument by *Mr. Felker*.

For the respondent there was a brief by *Eaton & Weed*, and oral argument by *M. H. Eaton*.

LYON, J. The only question argued by counsel, and the only one to be determined on this appeal, is, Does the special verdict support the judgment for the plaintiff? It is maintained by counsel for defendants that it fails to do so, because (1) it establishes the fact that the plaintiff was

guilty of negligence which contributed directly to the injury she received; and (2) it demonstrates that the defendants exercised reasonable care and diligence to avoid the injury.

1. The first proposition is based upon the answer to the seventh question in the special verdict, which is that, had the plaintiff looked before she attempted to cross the railroad track, she could have seen the light from the headlight of the locomotive which ran against her. But the testimony tends to show that, because of the curve in the track (which defendant's engineer testified is a sharp one), such light did not fall directly upon the plaintiff until the locomotive was very near the crossing. Also that there were trees and telegraph poles between the track and sidewalk, which to some extent obscured her view of the track nearly to the crossing. It also tends to show that the plaintiff was not familiar with that portion of Division street. She had been there but a few times since the railroad was constructed, and not at all for two or three years before she was injured. She knew the railroad crossed the sidewalk in that vicinity, but did not know the precise location of the crossing. Considering these circumstances, and, further, that the injury was inflicted at night and probably immediately after the plaintiff reached the track — presumably before she had time to realize the peril of her situation, or comprehend what she should do to avoid it,— it seems very clear that the question of her negligence, notwithstanding the seventh finding in the special verdict, was still a question of fact for the jury, and that they might properly find from the testimony that the case is an exception to the general rule that a person approaching a railroad crossing must look and listen for trains,— stopping for that purpose under some circumstances,— before he attempts to cross, or he is negligent. See *Phillips v. M. & N. R. Co., ante,* p. 349. We conclude, therefore, that the finding which acquits the

plaintiff of negligence contributing to her injury is supported by the testimony and should not be disturbed.

2. In running its locomotive across the sidewalk, did the defendants, under all the circumstances of the case, exercise proper care to avoid injuring the plaintiff? It is settled by the special verdict that the locomotive was running at the rate of six miles an hour, and the bell thereon was being rung continuously before and while crossing the sidewalk. This was a compliance with the requirements of the statute in those particulars. R. S. sec. 1809. It is quite evident that neither the fireman nor engineer could have seen the plaintiff on the sidewalk before the locomotive turned the curve, for the light from the head-light did not fall upon her, and after that time it was doubtless impossible to stop the engine before crossing the sidewalk. Hence, if any fact is found in the special verdict which charges the defendants with negligence, it is their failure to have at the crossing a light or flagman to warn the plaintiff of the approach of the locomotive. The jury found that such failure was negligence. On the authority of *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, which is in accord with the great weight of authority elsewhere, the jury were not competent to determine that proposition. Many of the adjudications on the subject are referred to by Mr. Justice CASSODAY in the opinion in that case. True, in *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, it is suggested in the opinion by Mr. Justice ORTON that the question of the obligation of a railway company to observe such extraordinary precautions in very dangerous places may be for the jury; but, after a thorough examination of the subject in the *Heddles Case*, we all reached the conclusion that the question cannot properly be submitted to the jury. The rule adopted in the latter case is clearly stated in an extract there made from the opinion by FINCH, J., in *Houghkirk v. D. & H. Canal Co.* 92 N. Y. 219, which will bear

repetition here.  It is as follows:  "The fact [of the presence or absence of a flagman] may be proven as one of the circumstances under which the train was moved, and by which the degree of care requisite in its handling and running may be affected, so that the question never is whether there should have been a flagman, or one ought to have been stationed at the crossing, but whether, in view of his presence or absence, the train was moved with prudence or negligence."  Although, in the above case, the question related only to the employment of a flagman, yet, manifestly, the same rule applies to any case in which it is claimed the railway company ought to maintain, at highway crossings, any extraordinary precautions, not specially required by statute, for the protection of travelers on such highways.

It follows that no weight can properly be given to the finding that the failure of defendants to have a light or flagman at the sidewalk crossing, to warn plaintiff of the approach of the locomotive, is negligence; but there still remains a finding that such failure caused the injury to the plaintiff.  Such is the obvious effect of the first and second findings in the special verdict, considered together; that is to say, the jury found therein two facts:  (1) That the failure to have at the crossing either a light or flagman to warn plaintiff of her danger caused the injury complained of; and (2) that such failure was negligence.  The jury were competent to determine the first proposition; hence the fact thus found is a verity in the case.  The finding of the other proposition is, as we have seen, ineffectual for any purpose.  Hence, there is no sufficient authorized finding in the special verdict that the defendants were guilty of negligence which caused the injury.

But there is another feature of the case which, in our opinion, supplies the defect in the verdict.  The undisputed evidence proves that the sidewalk crossing was a peculiarly dangerous one, especially to the plaintiff, who, burdened

with packages, was passing over it in the darkness of the evening, going in the same direction with the locomotive, without any accurate knowledge of the exact location of the track. Her only protection from injury was the watchfulness of the engineer and fireman on the locomotive, and, by reason of the trees, telegraph poles, and curve in the track, their vigilance was entirely inadequate to protect her. It is clear that, in view of these conditions, it was the duty of the defendants to provide some other means to secure her safety. Because they failed to do so the plaintiff was injured, for it is a verity in the case that she was in the exercise of proper care. Such failure is negligence, and, the negligence being conclusively established, the court properly may, and should, base its judgment upon the existence thereof, although there is no valid finding to that effect in the special verdict. Such is the rule in this state firmly established by many adjudications of this court.

In the *Heddles Case* it was not conclusively proved that it was the duty of the railway company to provide any additional precautions for the safety of travelers on the crossing. This fact distinguishes that from the present case. The jury found that the absence of a light or flagman on the crossing caused the injury complained of. These were probably named because they are the usual appliances in such cases. Doubtless the use of other precautions instead, equivalent to these, would fulfil all legal requirements.

*By the Court.*— The judgment of the circuit court is affirmed.

CASSODAY, J. The finding of the jury as to the defendants' negligence should be construed and considered in connection with all the undisputed facts and circumstances in the case. *Stilling v. Thorp*, 54 Wis. 536, 537. When so construed and considered, the finding of the defendants' negligence seems to be sustained. The mere fact that one

of the findings is to the effect that the defendants' negligence consisted in the absence of a light or flagman did not destroy the force of the other undisputed facts and circumstances as evidence; and hence the finding of the defendants' negligence is sustained by the evidence, and the judgment is properly affirmed.