THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. C. G. DURAND *et al.*

No. 12,306. (69 Pac. 356.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury at Crossing—Joinder of Parties.* A driver of a hack carrying passengers, who negligently drives in front of an approaching train of cars at a street-crossing, may be joined in an action against the railway company for negligently running into his hack, to the injury of one of his passengers.

2. ———— *Failure to Signal Approach of Train—Evidence of Other Like Failures.* In an action against a railway company for negligently running its train on a traveler at a city street-crossing, without giving any signal of the train's approach, it is error to admit evidence of a like failure of the train to signal its approach to another street-crossing in the city. (*A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284, 38 Pac. 257, 45 Am. St. Rep. 278, overruled.)

3. ——— *Gates at Crossings—Erroneous Submission to Jury.*
In an action against a railway company for negligently running
one of its trains on a traveler at a city street-crossing, where the
company was in the habit of operating gates across the street at
certain hours of the day, but not at the time of the accident, it is
error to refer to the jury the question whether the single, isolated
circumstance of failure to operate the gates at that time was neg-
ligence in the company.

Error from Sedgwick district court; D. M. DALE,
judge. Opinion filed July 5, 1902. *In banc.* Re-
versed.

*M. A. Low, W. F. Evans,* and *Stanley, Vermilion &
Evans,* for plaintiff in error.

*Houston & Brooks,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action for bodily in-
juries negligently inflicted upon plaintiff at a rail-
road- and street-crossing in the city of Wichita.
There was a circus entertainment in the outskirts of
the city. Albert Wilson was a hack-driver, carrying
people to and from the city and circus grounds. The
plaintiff and others were passengers in his convey-
ance. He negligently drove in front of a train as it
was running over the crossing near the depot. The
train approached the crossing without warning sig-
nals, and ran over it at a dangerously rapid speed,
and struck the conveyance in which plaintiff was
riding. These were the allegations of the petition
made against the railway company and Wilson
jointly. The defendants defended separately. A ver-
dict and judgment were rendered against them to-
gether, from which the company on its part has
prosecuted error.

The counsel for the railway company intended to

file a demurrer to the petition for misjoinder of causes
of action, but inadvertently filed an answer. The

1. Misjoinder of par-
ties and causes.
making of this mistake was satisfactor-
ily shown to the court, and leave asked
to withdraw the answer and file a demurrer. The
leave to do so was refused. This refusal constitutes
the first claim of error. It will not be necessary to
consider, in its ordinary aspect, the question of the
court's abuse of discretion in refusing to allow the one
pleading to be withdrawn and the other to be sub-
stituted. The court did not abuse its discretion, if
the demurrer when filed could not have been sus-
tained, and that such could not have been done is
reasonably clear.

The objection is that the petition charged a separate
independent tort on the part of both defendants —
against Wilson for negligently driving the plaintiff
into danger, and against the railway company for
negligently running over him. It is true that the driv-
ers of public conveyances, whether railway coaches
or common vehicles, are individually responsible for
the safety of their passengers, but so, likewise, are the
drivers of other conveyances responsible to the form-
er's passengers at points of collision or common dan-
ger. At such points there is a common and mutual
duty of diligence and caution, because there, to the
knowledge of each, a dangerous juxtaposition of their
respective vehicles is liable to occur. In the case of
a railroad and highway crossing there is a common
point of danger against which there is a mutual and
concurrent obligation to guard. That common point
is the one of contact between the train and the ve-
hicle. It is as though the injured person stood at
that point and the two rushed upon him with mutual
design to crush him between them. From one he

might escape, but not from the two together, seeking to compass his injury by the impact of their opposing forces. The rule of joint liability in such cases is stated in Thompson on Negligence, volume 3, section 2781, with citations to many supporting decisions. The case of *Kansas City v. File*, 60 Kan. 157, 55 Pac. 877, applies the same general principle to a somewhat different state of facts.

That the carrier of the passenger may be under a greater obligation of prudence and caution than the driver of the train or other vehicle does not change the rule of joint liability. The carrier may be required to use extraordinary care, the other only ordinary care. That, however, does not excuse the latter from using such measure of caution as the law imposes on him. It is no answer for him to say that, while he failed to observe the minor degree of prudence required of him, the other party failed to observe the greater degree required of him. The question of joint liability in such cases cannot be affected by the comparative culpability of the offenders. If the neglect of one to exercise the extraordinary degree of diligence required of him conjoins the neglect of another to use the lesser degree of diligence required of him, to the injury of a third person, such injury is none the less the single result of the two negligent acts or omissions of duty. It is well settled that the law will not undertake to apportion consequences between two or more persons jointly guilty of wrongful conduct toward another, though their contributions to the injury were in unequal degrees or from different motives; and it must be that the same rule applies where the injury was wrought by the neglect of differing degrees of responsibility.

There is no statute or ordinance of the city of Wich-

ita requiring trains to give warning signals of their approach to street-crossings. It was, of course, a disputed question whether the trainmen gave any signals of their approach to the crossing of the street at which the accident occurred. About two-fifths of a mile before reaching that crossing there

2. Evidence of other acts of negligence.

is another street, likewise running at a right angle with the track. Witnesses were allowed to testify that the employees operating the train in question failed to give any warning of their approach to that crossing. The admission of this character of evidence is defensible on the authority of the majority opinion in *A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284, 38 Pac. 257, 45 Am. St. Rep. 278, although in that case the two crossings were about a mile apart, and were in the country, where there is a statutory duty to give signals of approach to highway crossings. We think, however, the rule is the same in both kinds of cases. In one, as in the other, the evidence is offered for the purpose of laying a foundation from which to argue that, inasmuch as the railway company was negligent at one crossing, it was therefore negligent at the other one. It cannot be any the more admissible to prove the violation of a statutory duty at one place, or under one set of circumstances, in order to deduce the conclusion of a violation of the same kind of duty at another place or under another set of circumstances, than it is to prove the violation of a merely moral duty at one place or under one set of circumstances, in order to deduce the conclusion of its violation elsewhere or under other circumstances. We are constrained to think that the majority holding in the case of *A. T. & S. F. Rld. Co. v. Hague* was wrong. Although sup-

Railway Co. v. Durand.

ported by the decision of another state, it seems to us to be violative of a fundamental rule of evidence.

"Ordinarily, when a party is sued for damages flowing from negligence imputed to him, it is irrelevant, for reasons already given, to prove against him other disconnected though similar negligent acts. Thus, in an action against a bailee for the loss of property intrusted to him, evidence of independent acts of negligence not connected with the loss is inadmissible.  So, where the question, in a suit against a railway company, is whether a driver was negligent on a particular occasion, it is irrelevant to prove that he had been negligent on other occasions."  (1 Whart. Ev. §40.)

Analogous to this rule is the more familiar one which prohibits the proof against defendants in criminal trials of different and disconnected offenses, though of the same particular class.  Both these instances are applications of the general rule of inadmissibility of collateral incidents and circumstances to convict the party on trial, unless they, with the main incident, form connected parts of a common and designed system. (1 Whart. Ev. §29.)  Now, two failures of a locomotive engineer to sound crossing signals, though quite closely connected in point of distance and time, do not evidence a systematic inattention to duty; nor do we think, as counsel do, that the inference of systematic neglect is aided by the fact that the engineer was slightly behind time and was running through the city at more than usual speed, there being no evidence that such circumstances were conducive to the neglect of the duty in question.

There is no statute of the state or ordinance of the city requiring the maintenance of gates at street-crossings.  The court, however, gave to the jury the following instruction:

"It is for you to determine, from all the circum-

25—65 KAN.

stances surrounding the case, whether it was necessary
for the defendant railway company, in
the exercise of ordinary care by the company, to keep and maintain and operate
gates after six o'clock in the evening on said railroad-
crossing ; and, if you so find that the exercise of ordi-
nary care by the company required such maintenance
and operation, then it becomes the duty of the railway
company to use reasonable care and foresight to avoid
leaving said gates in such position, or managing them
in such manner, as needlessly to mislead a traveler
on the highway to his injury, and without his fault
into attempting to cross said railway-track at a time
when there was danger from approaching trains ; that
is, the company should do as a person of ordinary care
and prudence would do under like circumstances.''

*3. Gates at crossings—erroneous instruction.*

This instruction was erroneous, because it singled
out a particular circumstance, not directly connected
with the operation of the train, but collateral to its
operation, and gave it to the jury as a fact upon
which they might predicate a conclusion of wrong.
There is much dispute as to the soundness of instruc-
tions of the character of the one above quoted. The
court was not without abundant precedent for giving
it. ( 2 Wood, Rly. L. 1313, 1314; 2 Thomp. Negl.
§ 1537.) The better opinion, as it seems to us, is
that the court should not submit isolated facts, apart
from the main act of negligence, to wit, the careless
operation of the train, as sufficient to justify a ver-
dict. The point to the instruction in question is that
under it the railway company was made liable for
failure to shut down its gates, though it moved its
train never so cautiously. In *Grippen v. New York
Central*, 40 N. Y. 34, the trial court said to the jury :
''I leave it for you to say, under all the circum-
stances, whether a flagman at this station, as a meas-
ure of proper caution, was or was not required of the

defendants." This instruction was held to be erroneous, and the ruling then made has been followed in many subsequent cases in the courts of New York. The argument in one of these cases, *McGrath v. N. Y. C. & H. R. R. Co.*, 63 N. Y. 522, appears to us so strong and convincing that we quote much of it. Said the court:

"Where there has been a collision at a railroad crossing with a traveler upon the highway, and the railroad company is sued for negligence in causing the collision, its negligence is made out generally by proving all the circumstances surrounding the transaction, and submitting them with proper instructions to the jury. It may be proved that the collision took place in the night-time, in a rain-storm; that the train was running fast or slow, with or without headlights; that it was backing or going forward; that it was running in a city in a crowded thoroughfare, or in the country; that there were many or few tracks; that there were obstructions, making it impossible to see the train before the crossing was reached. These circumstances are proved, not to impose upon the railroad company any duty which the law does not impose, or any duty to do any acts collateral to the running and management of its trains in a lawful manner upon its road, but as bearing upon the question of the manner in which it has run and managed its train. A different degree of care may be required in running trains in the dark and in the daylight, in city and country, when there are obstructions and no obstructions near crossings. It would be error for a judge to charge a jury that it is the duty of a railroad company to remove obstructions near its road obstructing the observation of travelers at a crossing, and yet it would not be error to receive proof of the presence of such obstructions. For the same reason it would be error for a judge to instruct a jury that it is the duty of a railroad company to keep a flagman at a crossing or to submit to the jury the question whether it ought to have kept a

flagman there; and yet it would not be error to receive evidence of the absence of a flagman. There are many cases where trains can be run with greater speed, without negligence, if a flagman is kept at crossings, or other appropriate measures taken to warn travelers of the approach of trains. And, in the absence of flagmen, railroad companies may, in the exercise of proper care, be required to run their trains slower, or to take other precautions to protect travelers; the question in all cases being, not whether it was their duty to do any of the collateral things to warn travelers, but whether, under all the circumstances of the case, it run and managed its train with requisite care and prudence. To illustrate more fully the clear distinction which I claim to exist as to the use that may be made of such evidence : In a given case the evidence of the absence of a flagman is received, and the judge charges the jury that if they find that it was the duty of the defendant, under the circumstances, to keep a flagman at the crossing, the omission of that duty is negligence which may make the defendant liable. Under such a charge that duty is made the central and controlling fact; and if the jury should find that the defendant had run its train with the greatest care in other respects, and that it was guilty of no other negligence, and yet should find that it had omitted that duty, they could find a verdict against the defendant. Under the laws which make the duty of railroad companies to put sign-boards and ring the bell and blow the whistle at railroad-crossings, an omission of that duty, if the jury found that it contributed in any way to the accident, would make the defendant liable, no matter how careful it may have been in running and managing the train, and in all other respects. Such effect is given to that omission of duty, because the law imposes the duty and enacts the consequence for its omission. Under such a charge as I have supposed, the jury is put in the place of the legislature, and its decision as to the duty has the force of statute law; and hence such a charge has properly been condemned by the courts of this state. In another case the evidence is received

and the jury is charged that the defendant owed no duty to any one to keep a flagman at the crossing, but that its sole duty to travelers upon the highway was to run and manage its trains with proper care, so as not to injure them in the exercise of their lawful rights; and that upon the question whether such care was exercised, they must consider all the circumstances existing at the time and place of the accident, and among them the fact of the absence of a flagman at the crossing. In such a case a proper use is made of the evidence, and the charge is liable to no just criticism. If the jury find such care was exercised they will find for the defendant, whether there was a flagman at the crossing or not."

The same holding has been made by other courts. (*Heddles v. The Chicago & Northwestern R. Co.*, 74 Wis. 239, 42 N. W. 237; *Winchell v. Abbott and another*, 77 Wis. 371, 46 N. W. 665; *C. & I. R. R. Co. v. Lane*, 130 Ill. 116, 22 N. E. 513; *N. Y. C. & St. L. R. R. Co. v. Luebeck*, 157 Ill. 595, 41 N. E. 897; *Lesan v. Maine Central Railroad Co.*, 77 Me. 85; *Maryland Central Railroad Co. v. Neubeur*, 62 Md. 391.) To hold, as some courts have done, that the non-use of the accustomed gates at street-crossings is a notice of safety to approaching travelers, and tantamount to an invitation to cross, impinges very closely upon, if not in reality abrogates, the rule which requires persons about to cross railway-tracks to look and listen, and in some instances to stop in order better to do so. The doctrine, that the single circumstance of leaving gates open may be accepted by the jury as sufficient evidence of negligence in the company, is of a piece with that which acquits the traveler of negligence if he sees the gates open. They are both wrong. Of course, evidence in proof of the negligent omission to maintain gates at a street-crossing is admissible, and in *Kansas Pac. Ry. Co. v. Richardson*, 25 Kan.

391, it was held that such omission, although not specially alleged in the petition, was nevertheless included in the general charge of negligent operation of the train, and might be proved as one of the circumstances constituting the *res gestæ*. The implications from the language of the opinion in that case harmonize with the ruling we make in this one.

Many other claims of error are made. None of them impresses us as substantial enough to constitute of itself ground for reversal, if indeed it be even technically correct. However, in one instance a witness was allowed to give his opinion as to the speed at which the train approached the crossing, without showing a sufficiently close observation of it or thought at the time concerning it.

The judgment of the court below is reversed, and a new trial ordered.

All the Justices concurring.