## Terre Haute, Indianapolis and Eastern Traction Company *v.* Phillips.

[No. 23,722. Filed November 17, 1921.]

1. PLEADING.—*Complaint.*—*Conclusions.*—*Motion to Make More Specific.*—*Denial.*—*Effect.*—*Statutes.*—In view of §343a Burns' Supp. 1921, Acts 1915 p. 123, providing that recitals and conclusions in a pleading shall be deemed an allegation of the facts so recited and of the facts necessary to sustain such conclusions so far as they are necessary to the sufficiency of the pleading, subject to the right of the adverse party, by motion, to require that the facts to sustain the conclusion shall be set out, the denial of a motion to require plaintiff to set out in her complaint specific facts sustaining her conclusions of negligence, is an adjudication binding upon plaintiff, that all the facts known to and relied on by her tending to sustain such conclusions are already stated in the complaint, and such denial does not harm defendant, where the complaint, omitting such conclusions, states no facts showing liability. p. 380.

2. RAILROADS.—*Interurban.*—*Crossing Accidents.*—*Negligence.*—*Speed.*—In the absence of a statute limiting the speed at which interurban cars may be operated over country highway crossings, the running of an interurban car over such a crossing at any speed, however fast, consistent with the safety of the passengers, is not in itself negligence as regards a traveler at the crossing. p. 381.

Terre Haute, etc., Traction Co. *v.* Phillips—191 Ind. 374.

3. RAILROADS.—*Interurban.—Crossing Accidents.—Complaint.— Negligence.—Speed.*—In an action for personal injuries sustained by a passenger in an automobile in a collision with an interurban car at a country highway crossing, complaint *held,* not to allege facts, when disregarding certain conclusions pleaded therein, showing that the operation of the car over the crossing at a rate of sixty miles an hour was negligence. p. 382.

4. APPEAL.—*Review.—Complaint.—Sufficiency.—Theory.*—In an action for injuries sustained by plaintiff in a highway crossing collision between an automobile in which she was riding and an interurban car, where the complaint was drawn on the theory that the failure of defendant to have a watchman or an electric bell at the crossing constituted actionable negligence, its sufficiency must be determined on that theory. p. 382.

5. NEGLIGENCE.—*Actionable Negligence.—Elements.*—Actionable negligence consists of three elements, a duty imposed by law to do or to refrain from doing a certain thing, a violation of of that duty by doing the thing prohibited, or by failing to do the thing commanded, and an injury proximately caused by such violation of duty. p. 382.

6. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions. —Negligence.—Special Crossing Warnings.*—In an action for personal injuries sustained by plaintiff in a collision on a country highway crossing between an interurban car and an automobile in which she was riding, an instruction authorizing a finding of negligence on the part of defendant company if there was no electric bell or watchman at the crossing and the surroundings afforded "less than ordinary observation of an approaching car," regardless of how slowly the car was run or what precautions were taken to give notice of its approach, by blowing the whistle or otherwise, *held* erroneous. p. 386.

7. RAILROADS.—*Interurban.—Highway Crossings.—Special Warnings.*—There is no positive duty imposed by law upon interurban railroad companies to provide a bell or watchman at highway crossings in the country, except where an order to that effect has been made by the Public Service Commission or other proper authority. p. 386.

8. RAILROADS.—*Highway Crossings.—Omission of Special Warnings.—Negligence.*—At common law the absence of an electric bell or a watchman at a country highway crossing over interurban tracks might be shown as a circumstance attending the operation of a car to determine whether such operation was negligent, but the mere failure to provide such safe guards could not be negligence, though the operation of the car over such

crossing without the exercise of ordinary care in view of the conditions might be.    p. 387.

9. TRIAL.—*Instructions.—Applicability to Evidence.—Negligence.* —In an action for injuries sustained in a collision on a highway crossing between an automobile and an interurban railroad car, it was error to give an instruction predicating negligence on the failure to provide an electric bell or a crossing watchman, where there was no evidence to show failure to provide such safeguards.    p. 389.

10. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions.* —*Negligence.—Degree of Care.*—In an action for injuries sustained in an interurban highway crossing accident, an instruction that the degree of care required of defendant interurban railroad company need only be commensurate with the danger to be apprehended and the fatal consequences which are liable to result from neglect was inaccurate and misleading since the degree of care required is only the ordinary care which a prudent and careful person would exercise under the circumstances.    (*Indianapolis St. R. Co.* v. *Seerley* [1904], 35 Ind. App. 467, disapproved in part.)    p. 389.

11. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions.* —*Negligence.—Speed of Car.*—In an action against an interurban railroad company for injuries sustained in a highway crossing accident, an instruction authorizing the jury to find defendant negligent if it found that the car was run toward the crossing at a high rate of speed, and in so doing there was a failure to exercise the care of a person of ordinary prudence under the circumstances, *held* erroneous, in view of the evidence, as permitting the finding of negligence upon proof of the single fact of speed.    p. 390.

12. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions.* —*Negligence.—Imposing Duty not Required by Statute.*—In an action against an interurban railroad company for personal injuries sustained in a highway crossing accident, an instruction that it was the duty of defendant to do certain specific acts not commanded by statute "in the exercise of ordinary care" should have declared the duty to exercise such care in operating the interurban car, and stated that what the evidence showed as to whether the enumerated acts were done or were omitted could be considered in determining whether defendant exercised ordinary care, leaving the question of negligence to the jury.    p. 390.

13. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions.* —*Imputed Negligence.*—In an action against an interurban railroad company to recover for injuries sustained by plaintiff in a collision between an automobile; in which she was a pas-

senger and defendant's car, an instruction that the negligence of the driver of the automobile could not be imputed to plaintiff so as to bar her right of action, and that the combined negligence of the driver and defendant could not bar the action, *held* erroneous in form, as tending to impress the jury that plaintiff's injury necessarily gave her a right of action, unless it should be barred by some fact proved by the defense. p. 390.

14. NEGLIGENCE.—*Imputed Negligence.—Instructions.*—In an action against an interurban railroad company for injuries sustained by plaintiff in a collision between an automobile in which she was riding and defendant's car, an instruction that the negligence of the driver of the automobile could not be imputed to plaintiff so as to relieve the defendant from liability if plaintiff was injured without her fault by concurring negligence of the driver and defendant, was objectionable in form. p. 391.

15. RAILROADS.—*Interurban.—Crossing Accidents.—Instructions. —Reliance on Signals.*—In an action against an interurban railroad company for injuries sustained in a highway crossing accident, an instruction that plaintiff was not negligent in assuming that no interurban car was advancing toward the crossing within a distance of eighty rods without blowing the whistle, was erroneous, since the former statute (Acts 1879 p. 173), requiring that the whistle be blown continuously within eighty rods, is no longer in force. p. 391.

16. DAMAGES.—*Instructions.—Measure of Damages to Unemancipated Minor.*—In an action for personal injuries, where the evidence showed that plaintiff was only twenty years old when injured, that thereafter she continued to live with her mother while attending business college and school, and then was employed for a short time, all before she became twenty-one years of age, and there was no evidence that she was emancipated prior to attaining her majority an instruction that, in estimating the damages, the jury could consider "any depreciation in her earning capacity due to said injuries and shown by the evidence," was inaccurate and tended to mislead the jury. p. 392.

17. INFANTS.—*Emancipation.—Evidence.*—The mere fact that the mother of an injured minor testified in her behalf in her action for personal injuries was not sufficient to establish that the minor had been emancipated, and entitled to her earnings. p. 392.

18. TRIAL.—*Instruction.—Credibility of Witnesses.—Excluding Parties to Action.*—In an action for personal injuries where plaintiff gave material testimony in her own behalf to which

no other witness testified, and defendant, being a corporation, could not testify, an instruction on the credibility of witnesses influenced by personal interest, bias or prejudice which excluded the parties to the action, was erroneous, in the absence of any instruction authorizing the jury to consider the interest of the plaintiff in determining her credibility.  p. 392.

From Putnam Circuit Court; *James P. Hughes,* Judge.

Action by Essie Phillips against the Terre Haute, Indianapolis and Eastern Traction Company.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*McNutt, Wallace, Harris & Randel,* for appellant.
*Rawley & Baumunk, Harvey L. Fisher, Hays & Murphy* and *William F. Elliott,* for appellee.

EWBANK, J.—The appellee recovered a judgment for $8,250 damages for personal injuries sustained in a collision between an automobile driven by her father, with whom she was riding, and an interurban car operated by the appellant.  The collision took place at the point where a country highway, approaching from the south, crosses appellant's railroad tracks and intersects the National road, appellant's tracks being immediately south of the traveled way in the National road, and either upon or adjoining the highway, without any fence between it and the wagon track, but not upon the traveled part of the highway.  Appellee's father and a boy sitting beside him in the automobile were instantly killed by the collision.

The questions presented arise upon the overruling of motions to make the third paragraph of the complaint more specific, and of demurrers to each paragraph of the complaint, and a motion for a new trial, to each of which rulings the appellant excepted.

The third paragraph of the complaint alleged, in substance, that the crossing where the collision occurred

was about three miles west of the city of Brazil; that a west-bound car in approaching it, would run down grade for the distance of 1,500 feet; that in the angle southeast of such highway crossing were a house, shrubbery and out buildings, and south of them were an orchard· and a cornfield; that these obstructed the view of appellant's railroad toward the east by one riding in an automobile approaching from the south, so that she could not see a car coming from that direction until the automobile was within twenty feet of the south rail of the track; that the situation was such that the noise of a car approaching from he east was deflected to appear as if from the west; that an average of one vehicle each ten minutes throughout the day approached appellant's track from the south, and many passed along the National road (but it is not alleged that any vehicles passed over the railroad track on this crossing) ; that in coming down the grade toward the crossing the operation of the cars "made practically no noise;" that appellant's interurban car was the same color as the weeds and foliage; that the appellant knew all of said facts; that there was no "special safeguard or any arrangement to warn persons" using the crossing of the approach of cars, "as required in the exercise of due and ordinary care by the law of the State of Indiana;" that defendant failed to provide "any bells or other appliances or adequate warning;" that appellant ran one of its cars, four minutes late, and at about the time another car was due from the other direction, over said crossing from the east at the rate of sixty miles an hour, and struck the automobile running four miles an hour in which appellee was riding, and injured her. The conclusion was also stated that because of said conditions and surroundings, "notwithstanding reasonable prudence and care  *  *  *  required said company to provide some other and special safeguards at said par-

ticular crossing, such as an electric bell, a watchman or other like safeguards of a special nature * * * (appellant) carelessly and negligently failed" to do so.

The third paragraph further alleged in general terms, that the appellant "carelessly and negligently ran one of its cars on to and over said crossing at a rate of speed of more than sixty miles an hour, and carelessly and negligently ran said car into and against the automobile in which the plaintiff was riding, and against her," when she was exercising due care, and thereby injured her; and "that said injuries were caused solely and proximately by the negligence and fault of the defendant in the manner herein stated."

The appellant filed motions to make more specific each of the above quoted expressions, as to its alleged negligent failure to provide "safe guards" and "warnings," and what was "required in the exercise of due and ordinary care," and how it ran the car, by stating the facts supporting each alleged conclusion, and the facts constituting the alleged negligence, but the trial court overruled each of these motions and gave appellant an exception.

This must be deemed a decision by the trial court, procured by and binding upon the appellee, adjudging that all the facts known to and relied on by the appellee tending to support such general averments were already stated in this paragraph of the complaint. A statute now provides that recitals and conclusions in a pleading shall be deemed an allegation of the facts so recited and of the facts necessary to sustain such conclusions, so far as they are "necessary to the sufficiency of such pleading," subject to the right of the adverse party, by motion, to require that the facts to sustain the conclusions shall be set out. §343a Burns' Supp. 1921, Acts 1915 p. 123.

This can only mean that where a proper motion to

make the pleading more specific by setting out the facts is duly made, and is overruled, the pleading must be regarded as already stating specifically the facts relied on to support the conclusions to which such motion was addressed. And as so understood appellant was not harmed in this instance by the ruling on its motion.

This paragraph of the complaint does not charge that the car which struck appellee "made no noise," or that it failed to give the statutory signals when approaching the crossing; but it might be true, so far as these allegations are concerned, that the motorman sounded the whistle four times when eighty rods from the crossing, and again sounded it four times when less than thirty rods from the crossing, and again sounded it three times when fifty to seventy-five feet from the crossing, and that the driver of the automobile heard the whistle, but thought it came from the west, and therefore did not look eastward, and that the view toward the east was open for 300 feet while the automobile ran the last twenty feet toward the track, all as was indicated by evidence introduced at the trial. This paragraph alleges nothing to the contrary. And if the scope of the alleged conclusions be limited to the issuable facts alleged, but little is left of the charge of negligence except that many vehicles "approached" the crossing from the south, and many more passed by it along the National road, that the interurban car was running at the rate of sixty miles an hour, and that the appellant did not maintain an electric bell or a watchman at the crossing.

The mere fact that an interurban car was run over a highway crossing in the country at any speed consistent with the safety of the passengers, however fast that might be, would not in itself constitute negligence, as affecting a traveler passing over the track at such crossing. *Terre Haute, etc., R. Co.* v. *Clark, Admr.* (1880), 73 Ind. 168; *Lake Shore, etc., R.*

*Co.* v. *Barnes* (1906), 166 Ind. 7, 76 N. E. 629, 3 L. R.
A. (N. S.) 778n; *Brooks* v. *Muncie, etc., Traction Co.*
(1911), 176 Ind. 298, 306, 95 N. E. 1006; *Indiana Union
Traction Co.* v. *Love* (1912), 180 Ind. 442, 449, 99 N.
E. 1005.

And while the conditions as to obstructions of view
and amount of travel on such a highway might be such
as to show negligence in dashing across it at sixty
3-5.    miles an hour, the facts alleged in this paragraph
of complaint (disregarding the conclusions to
which the motions to make more specific were ad-
dressed) are not such as to impose a duty to run slower.
The paragraph was obviously drawn on the theory that
under the facts stated the alleged failure to have a
watchman or an electric bell at the crossing constituted
actionable negligence, and its sufficiency must be deter-
mined on that theory.    Actionable negligence consists
of the three elements of (1) a duty imposed by law to
do or not to do a certain thing, (2) a violation of that
duty by doing the prohibited thing, or by failing to do
the thing commanded, and (3) an injury proximately
caused by such violation of duty.    Interurban railroads
are expressly authorized by law to operate across inter-
secting highways.    No speed limit has been fixed for
them by statute.    And the rule of the common law
which applies when locomotives and cars are pushed or
drawn over crossings thronged with travel in city
streets, as declared by the decisions cited in appellee's
brief, has only an indirect and remote application to a
crossing in the country, where the measure of care to
be observed by the railroad company, in erecting sign
boards, blowing the whistle, ringing the bell, carrying
headlights, maintaining warning bells or watchmen, re-
moving obstructions and even trimming hedge fences
near such crossings, are regulated by express statutes,

or by police orders of the Public Service Commission and other officers.

Whether the defects in the third paragraph of the complaint would require a reversal of the judgment in case it appeared that the cause was submitted to the jury upon proper instructions, and that there was evidence fairly tending to establish the facts hinted at but not sufficiently alleged, need not be decided. For it appears that in giving instructions the court expressly adopted the theory that failure to maintain an electric bell or a watchman at the crossing constituted negligence, and so instructed the jury, as hereinafter stated.

There was evidence fairly tending to prove that the appellant's interurban car was run down a long grade with the power turned off at the rate of fifty miles an hour, over this crossing, without giving the statutory crossing signals, and that the automobile was stopped before driving on the track, and that appellee could not see nor hear the approaching car because of said facts, and because the trees and bushes obstructed her view, but that she did call out to the driver as soon as she was where she could see the car. However, there was no evidence that the crossing was not provided with an electric alarm bell, or a watchman or both, nor that vehicles traveled the highway coming from the south toward or over the crossing at ten minute intervals, or that any at all passed over it before the accident except the automobile that was struck by the car.

But there was other evidence to the effect that the interurban car was only running twenty miles an hour; that the statutory signals were given, and thereafter the whistle was repeatedly blown, as above stated; that a house stood thirty-three feet south of the railroad track, and that after passing it there was a view up the track, in the direction from which the car came, so that a car

could be plainly seen from there or from any point north of there when it came within a distance of 348 feet from the crossing, and that the distance one could see up the track increased as a traveler approached the railroad, and that persons driving north on the highway could also look across south of the house and see the interurban railroad; that the driver of a wagon going north on this highway toward the crossing that was passed by the automobile in which appellee was riding saw the car approaching; that the automobile in which appellee was riding drove to and upon the track at a speed substantially as great as the speed of the interurban car, and that the fear of an impending collision from seeing both the automobile and the car running toward the same point caused a woman in the house to go to the door and shout a warning, and caused two little girls in a swing behind the house to run to the coal shed, and one of them to run into it, before the collision occurred, and that the appellee, in pleadings filed by her, had averred that for 1,000 feet that the car ran, the motorman had an unobstructed view of the highway over which the automobile came for forty feet south of the track, and except for an interval of forty feet covered by the house had such unobstructed view of the highway for 800 feet south of the track, while traveling said 1,000 feet, and that the automobile was run upon the crossing and the engine "killed," and that the car struck it before the occupants had time to get out.

As applied to this evidence the court gave plaintiff's (appellee's) instruction No. 18, as follows: "It is the law in this state that whenever in the exercise of due care and caution in running its car it becomes reasonably necessary, considering the nature, location and surroundings of a crossing of an interurban railroad and public highway that an electric bell or watchman or other like safe guards should be placed at such crossing

to give notice to travelers of approaching danger and to signal and to give notice to them when it will be reasonably safe for them to make such crossing, it is the duty of such interurban railroad to place an electric bell or watchman or other like safe guards at such crossing for the purpose of protecting those rightfully using said crossing, and a failure of the said railroad company under such circumstances to place an electric bell, a watchman or other like safe guard at such crossing, is negligence. So in this case if you find from the preponderance of the evidence that because of the special circumstances and surroundings existing at the intersection of the Staunton road with the defendant interurban railroad at the point complained of in plaintiff's complaint, such as the near situation of houses, trees, bushes, poles, buildings, vegetation or other natural obstructions, which afford less than ordinary observation of an approaching car, that it was reasonably necessary that the defendant should have provided some special safe guard to persons using the crossing in question in a prudent and cautious manner, and you further find that said crossing was not reasonably safe for travelers upon the highway in the exercise of reasonable care without such safe guard, and you further find that the defendant company failed and neglected to provide any special safe guards such as an electric bell, a watchman or other special safe guards, and you further find that by reason of its failure to provide such special safe guard it did not act as a reasonably prudent person would have acted under the same or similar circumstances, then you would be justified in finding that the defendant was guilty of negligence, and if you find that such negligence was the proximate cause of plaintiff's injury, if you find that she was injured, then it would be your duty to find for the plaintiff unless you further

find by a preponderance of the evidence that the plaintiff was guilty of negligence which contributed to her injury. Whether reasonable prudence requires an interurban railroad company to provide some special safe guard at a particular highway crossing, and whether it has used adequate safe guards under all the circumstances of the particular case, is a question of fact for the jury to determine under the particular circumstances of the particular case under consideration. The degree of care required of it need only be commensurate with the danger reasonably to be apprehended and the fatal consequences which are liable to result from the neglect."

It will be observed that this instruction did not refer to the speed at which the car was run, or the manner in which it was operated, or the frequency with which travelers passed over the crossing, but authorized a finding of negligence on the part of the defendant company if there was no electric bell or watchman at the crossing and the surroundings afforded "less than ordinary observation of an approaching car," no matter how slowly the car was run nor what precautions were taken to give notice of its approach, by repeatedly blowing the whistle or otherwise, nor how infrequently the highway was used. This was error. The failure to provide a bell or watchman at a highway crossing in the country to warn travelers could only be actionable negligence if it violated some duty imposed by law on the railroad company. And no positive duty to install such warnings is imposed by the law of Indiana, except where an order to that effect has been made by the Public Service Commission (See, §§5261a-5261d Burns' Supp. 1918, Acts 1915 p. 105) or other proper authority.

At common law the fact that there was no electric bell or watchman might be shown, as a circumstance

attending the operation of the car, from which
8. to determine, in connection with the amount of
travel habitually passing over the crossing and
all other circumstances, whether or not the operation of
the car in the manner and at the speed that it was oper-
ated was negligent.   But a duty to run a car with care
in view of the fact that there are no special warnings
at the crossing is not the same as a duty to provide and
maintain a bell or watchman no matter how the car is
run.   There is no duty under the common law to place
a bell, watchman, or other special warning, at a high-
way crossing in the country.   *Evansville, etc., R. Co.* v.
*Clements* (1904), 32 Ind. App. 659, 70 N. E. 554; *Lake
Erie, etc., R. Co.* v. *Howarth* (1919), 73 Ind. App. 454,
124 N. E. 687, 127 N. E. 804; *Telfer* v. *Northern R.
Co.* (1862), 30 N. J. Law 188; *Lake Shore, etc., R. Co.*
v. *Reynolds* (1901), 23 Ohio Cir. 199; *Sykes* v. *Maine
Central R. Co.* (1913), 111 Me. 182, 88 Atl. 478; *Win-
chell* v. *Abbot* (1890), 77 Wis. 371, 46 N. W. 665;
*Beisiegel* v. *New York Central* (1869), 40 N. Y. 9;
*Grippen* v. *New York Central* (1869), 40 N. Y. 34;
*Houghkirk* v. *President, etc., Co.* (1883), 92 N. Y. 219,
44 Am. Rep. 370.

Nobody would deem it negligence to run an in-
terurban car over such a crossing as is described in
this instruction at a rate of speed not faster than a
man could walk, after giving the statutory signals, al-
though there was neither a watchman nor a bell sta-
tioned there.   If the car was run at twenty miles an
hour, and whistled four times when less than 500 feet
from the crossing, and three times when seventy-five
feet distant, in addition to giving the statutory signals,
as was testified by witnesses for the defendant, the mere
fact that there was neither a watchman nor a bell could
not make it negligence so to operate the car.   And no
matter how fast the car was run, a failure to keep a

watchman or a bell always at the crossing would hardly be deemed negligence if no travelers passed over it except appellee's father every other day, and an occasional vehicle, which is all that was shown by the evidence in this case; while the instruction ignored the question of what amount of travel used the crossing, and the speed at which the car was run.

A line of decisions by courts of other states have declared that where a train or car was operated over a crossing at such a speed, and under such circumstances of obstructions to view and frequency of the passage of travelers that there was grave danger of injuring persons using the highway with due care, unless they were warned of the approach of the train or car by a watchman or bell or other special device, the jury might find that the failure to provide the watchman or bell or other special warning constituted negligence. Many if not all of these cases were correctly decided upon the facts therein presented, though the declarations of law were not accurate. To be guilty of negligence in operating a car or train at a certain rate of speed under certain circumstances, over a crossing that is not protected by a watchman or bell or other special warning, is not the same as being guilty of negligence in failing to station a watchman or bell or other signal at a crossing over which cars and trains might be operated more slowly and under other circumstances with safety. Yet the two propositions are confused by many courts and writers of text books. The case of *Pittsburgh, etc., R. Co.* v. *Tatman* (1919), 72 Ind. App. 519, 122 N. E. 357, is clearly distinguishable from the case at bar, but in so far as any *dicta* in that case, quoted from the courts of other jurisdictions, is inconsistent with this opinion, the same is disapproved. However, even under the rule laid down by those authorities, the instruction under consideration would still be erroneous.

This instruction is also erroneous as relating solely to a state of facts not shown by the evidence. Nobody testified that there was no watchman, and no electric bell or other special warning at the crossing. And where a party seeks to predicate negligence upon a negative fact he must offer evidence to negative that fact.

Appellant also complains of that part of the last clause of this instruction which states that "The degree of care required of it (the appellant) need only be commensurate with the danger reasonably to be apprehended and the fatal consequences which are liable to result from neglect." That this statement is not accurate is obvious. The "degree of care required" is only the "ordinary care" which a prudent and careful person would exercise under the circumstances. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737; *Pittsburgh, etc., R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 126 N. E. 13; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E 242; *Lake Erie, etc., R. Co.* v. *Ford* (1906), 167 Ind. 205, 78 N. E. 969.

The expression quoted, understood as referring to the precautions to be taken in the exercise of ordinary care, states a fact that is often true, no doubt, and has been used by judges and text book writers in discussing the subject of negligence. But its use in an instruction with relation to an injury from which "fatal consequences" resulted was misleading. The mere fact that a statement is made by a judge in discussing a special verdict or answers to interrogatories is not enough to justify incorporating it in an instruction to the jury. So far as the case of *Indianapolis St. R. Co.* v. *Seerley* (1904), 35 Ind. App. 467, 72 N. E. 169, 72 N. E. 1034, holds the contrary it is disapproved.

Instruction No. 10, given by the court, told the jury

that: "If you find that the defendant ran its car toward and upon said crossing, at a high rate of speed, and if you further find that in so doing it failed to exercise the care of a person of ordinary prudence under the circumstances you will find that the defendant was guilty of negligence in so doing, and if you further find that said negligence, if you find the same to be negligent, was the proximate cause of plaintiff's injury, without her fault, then your verdict shall be for the plaintiff."

As applied to the evidence this could only have been understood as a general direction that the jury was at liberty to find the appellant guilty of actionable negligence upon proof of the single fact that it was running its car over the crossing at a "high rate of speed" when the collision occurred. As was stated above, this is not the law.

Instruction No. 17½ told the jury that "it is the duty of the" appellant to do certain specific things not commanded by statute "in the exercise of ordinary care," instead of merely declaring the duty to exercise such care in operating the car, and stating that what the evidence showed as to whether the enumerated acts were done or were omitted could be considered in determining whether the appellant did or did not use care. The form of this instruction is disapproved.

Instruction No. 5½ told the jury that the negligence of the driver of the automobile could not be imputed to appellee "so as to bar her right of action," and again that the combined negligence of such driver and of the motorman could not "bar the plaintiff's action," and concluded with a direction that under certain circumstances "then your verdict should be for the plaintiff." The form of this instruction tended strongly to impress the jury that plaintiff's in-

jury necessarily gave her a "right of action" unless it should be "barred" by some fact proved by the defense. This was error.

Instruction No. 6 told the jury that negligence of the driver of the automobile could not be imputed to appellee "so as to relieve the defendant from liability" in case she was injured without her fault by concurring negligence of such driver and the appellant. The form of this instruction is open to objection, though the error complained of was probably harmless.

Instruction No. 8 told the jury that in the absence of any indication to the contrary "the plaintiff was not negligent in assuming * * * that no interurban car was advancing toward the crossing within a distance of eighty rods, without blowing the whistle." It was obviously copied from a statement by the judge who wrote the opinion in *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476, at the top of page 484. But it appears on page 483 that the decision referred to was based upon a statute which commanded a railroad company operating a locomotive engine across a highway, "when such engine is not less than eighty nor more than one hundred rods from such crossing, (to) sound the whistle * * * continuously, from the time of sounding such whistle until such engine shall have fully passed such crossing." Acts 1879 p. 173. No such law is now in force, and this instruction should not have been given. *Cincinnati, etc., R. Co.* v. *Howard* (1890), 124 Ind. 280, 24 N. E. 892, 8 L. R. A. 593, 19 Am. St. 96.

The last clause of instruction No. 12 was erroneous for reasons given when discussing No. 18, as declaring that appellant was subject to a positive duty to do certain things not commanded by statute, instead of leaving to the jury the question whether or not appellant

was negligent in the operation of its car in view of what the evidence showed that it did and failed to do.

There was evidence that appellee was twenty years old on July 20, 1916, and was injured August 12, 1916, that she went on crutches until the last of the following November; that the next January she began attending business college, and attended school six months and then worked at typewriting. two months, all before she was twenty-one years of age, and that during all of this time she was tired and worn out each night, and "was not physically able to do short-hand." It was also shown that during all of this time she continued to live with her mother, and there was no evidence tending to show that she was emancipated at that time. As applied to such evidence the statement, in instruction No. 20, that in estimating the damages to be ·awarded the jury might take into account "any depreciation in her earning capacity due to said injuries and shown by the evidence," was inaccurate and tended to mislead the jury. The mere fact that her mother testified as a witness was not sufficient to establish that the daughter was emancipated, and entitled to her own earnings.

The appellee was her own chief witness, and certain important facts, such as that the automobile was stopped before being driven on the railroad track, were not proved by any testimony but her own, though disputed by other witnesses. Appellant being a corporation could not and did not testify. Instruction No. 21, after stating certain rules as to what should be considered in determining the credibility of the witnesses, told the jury that: "If you believe from the evidence or from the. facts and circumstances proved upon the trial, that any witness, *other than the parties to this action,* has received or will receive any benefits, personal or otherwise, directly or indirectly from any

source, or who entertains an illegal motive, which is reasonably and fairly calculated to bias, prejudice, control or influence him either to testify falsely or to color his testimony contrary to the truth, then you may consider such fact in deciding whether you will credit or discredit his testimony."

And the instruction, thus strictly limited to witnesses "other than the parties" in the part quoted, did not contain a suggestion that the interest of the plaintiff in the result of the action was to be considered on the question of her credibility. Neither did the court, so far as we have been able to discover, give any other instruction which intimated that the jury might consider the interest of the plaintiff, and any expected benefit to her and possible bias on her part, in determining her credibility, but left the statement that circumstances as to the consideration of expected benefits and bias were to be considered in relation to "any witness other than the parties," standing alone. As applied to the facts of this case the quoted part of this instruction was erroneous.

The appellant requested the court to give eighty-nine instructions, of which the court gave forty-four and refused forty-five, besides giving twenty-six requested by the appellee. Many of the instructions refused were mere reiterations, in different language, of the rules of law declared in the ones which the court gave. Some of them were erroneous in declaring, in positive language, rules which should have been modified by some qualifying phrase, such as "in the exercise of ordinary care." Some of them were couched in the form of an argument that the rules of law declared should be applied to what were assumed to be the facts of this case, and it is possible that some of them declared correct rules of law not covered by the instructions given. But where the issues are no broader than were joined in this

case, a request for eighty-nine instructions, covering fifty-six typewritten pages, is almost equivalent to an invitation to commit an error in choosing the ones to be given. And without deciding whether any of the refused instructions should have been given, in addition to the seventy given by the court, we must decline to extend this opinion by analyzing those given in the light of those requested.

The judgment is reversed, with directions to sustain appellant's demurrer to the third paragraph of the complaint.

Myers, J., absent.